[Civ. No. 105.   Third Appellate District.—December 15, 1905.]

## G. W. HOWELL, Appellant, v. J. W. BOYD, Respondent.

EXECUTION — EXEMPT PROPERTY USED IN FARMING — DEBTOR NOT A FARMER AT DATE OF LEVY.—In order to claim the exemption from execution of farming utensils and implements of husbandry and other property used in farming described in subdivision 3 of section 690 of the Code of Civil Procedure, it must appear that the judgment debtor was engaged in the business of farming at the date of the levy; and a judgment debtor who was not then so engaged, but had left the business of farming, and was engaged in other business in another state, prior to and at the time of the levy upon such property, cannot claim the same as exempt.

APPEAL from a judgment of the Superior Court of Tehama County.   John F. Ellison, Judge.

The facts are stated in the opinion of the court.

H. P. Andrews, for Appellant.

McCoy & Gans, for Respondent.

BUCKLES, J.—This was an action to recover certain personal property claimed by the plaintiff to be exempt from execution as farming property, under section 690 of the Code of Civil Procedure. The plaintiff was in debt to the Bank of Tehama County for over $5,000. The bank sued and attached this property, consisting of two horses, harness, spring wagon, grain wagon, four gang plows, three single plows, two harrows, a combined harvester, one hay rake, two hay racks, two mowers, two cultivators, one fanning mill, one Jackson derrick fork, two cows and their sucking calves, and four large pork hogs; all of said property being worth the sum of $1,000. Judgment was for the bank in that case, and defendant then brought this action against Boyd, the sheriff, holding the property. The judgment was for the defendant, and this appeal is from the judgment and order denying a motion for a new trial.

The lower court found that the plaintiff was the owner of the property, but was not in possession of it when attached, and was not entitled to the possession. That plaintiff was not a farmer on September 7, 1904, when the property was attached, and that it was not exempt from execution. The demand for the return of the property is admitted. That on September 7th the plaintiff had given up farming and left the state of California; that he left California August 23, 1904, and went to Washington, and there engaged in other business than that of farming; that he left said property in charge of his wife on the ranch, and that she wrote a letter to one Sydenstricker, who then had charge of the J. W. Howell Company ranch where the property was situated, stating that the ranch and the personal property was abandoned, and that he should take charge of the said personal property and look after it and water the stock; that the said wife at the same time posted a notice on the door of the house on said ranch where the personal property was situated, addressed to him, instructing him how he could get water for the stock; and that said Sydenstricker then took charge of said property, on or about August 26, 1904, and kept it until the levying of the attachment September 7th. The plaintiff's deposition was taken in Washington, October 25, 1904. Up to that time plaintiff had not returned to California and had not engaged in farming after leaving California. He testified as follows:

"I am a farmer and reside in Tehama county, Cal., and farming was my occupation on September 7, 1904. I was the owner and in possession of all the said personal property on September 7, 1904, and I claim the same as exempt from execution under the laws of California, and I never did, prior to September 7, 1904, give up the possession of said property to anyone, nor abandon the same to creditors." He further testified that he had been engaged in farming all his life; that he left California about August 23, 1904, and went to Colfax, Washington, and went to work in a blacksmith-shop, where he worked for two weeks, and then went to Pullman, where he worked in a livery-stable from October 1st to October 25th. He says: "When I left Tehama county I left this personal property in charge of my wife, and told her to get some one to take care of it, and some one to look after it. I did not send word or authorize word to be sent to my father to take charge of the property. I did not intend father should take the property I left and sell or otherwise dispose of it to pay my debts at the Bank of Tehama County. I expected him to take some of it for that purpose, but not what was exempt. When I left Tehama county I had not fully determined what I would do with this property. I left to see if I could find a better location, and did not know where I would go, and had not made up my mind to take up my residence outside of the state of California, nor have I yet done so, and I have not decided what I would do with this property. I could not conveniently dispose of it when I left, and had no occasion to claim it as exempt until it had been attached. I had not made up my mind what to do with my family, and have not yet." J. W. Howell, the father of the plaintiff, who testified for the defense, says that plaintiff farmed a section and one-half of land for him during the last year, but his lease did not extend beyond September 1, 1904, and that the plaintiff had no claim on the land on September 7th for any purpose. That he also farmed other land "last season." Plowed some summer-fallow in the spring, but had no control of it on September 7th. Had a contract for the purchase of three hundred and twenty acres of land, but did not make the first payment, which was due; that plaintiff had no land in Tehama county and had none under lease there since before September 7th. When the witness returned from

a trip east about September 1, 1904, his son Ralph and son in law Sydenstricker were in possession of this personal property and were taking care of it. For the last thirteen years plaintiff had rented of witness and farmed the Adobe ranch, but in August this ranch belonged to the J. W. Howell Company, a corporation; that plaintiff is now, and was when he left, a member of said corporation, and a director therein; that the corporation had never given him any written notice that he was not to retain possession of the place after September 1st. Plaintiff had no seed grain on the ranch or anywhere else for sowing for another season. He had done no farming, put in no grain or made any pretense to since September 1, 1904. The witness Sydenstricker testified that he took charge of this property at the request of plaintiff's wife, that there was no way of the stock getting water except as it was pumped to them, that he found the windmill broken and fixed it, and thereafter cared for the stock and property. When he went to the ranch where the property was situated he found the place deserted, the household goods gone, no one at the place, and a notice posted on the door addressed to him suggesting to him how he should proceed to get water for the stock. O. W. Parsons testified that plaintiff had said to him the early part of August, that ''he had got tired of hard work; crops were getting poor, wasn't making anything, and he had got disgusted with it and wasn't going to stick a plow in that ranch again. He said he was trying to sell the summer-fallow.'' Jeff Brunk testified he purchased a Graham seeder and the summer-fallow of plaintiff a few days before he left. During the season of 1903-04 plaintiff had used in his farming business thirty mules, ten head of horses, a combined harvester, two or three mowing machines, four gang plows, two or three single plows, two harrows, two cultivators, and two Graham seeders; one of these seeders belonged to his father and the other he sold to Jeff Brunk. This, then, is the testimony on which the court based its findings.

The question is: Was the plaintiff a farmer, in the sense of the section which exempts certain property of the farmer, on September 7, 1904? It is certain that on September 7, 1904, the plaintiff was not actually engaged in doing any act that would make him a farmer. This could be true, and yet he be a farmer, and the things which would tend to establish that

fact would be found in the possession by him of farming land, either as owner or renter, seed grain reserved and on hand, food for two horses or stock with which to put in the grain, the owner of summer-fallow reserved for seeding, in possession of stock and tools sufficient for farming purposes, and any other preparations a farmer would naturally make for carrying on the business of farming for the next year. Not one of these things could appellant show to the court below because not possessing them. The provision of law under which plaintiff claims the exemption is subdivision 3 of section 690 of the Code of Civil Procedure, and reads as follows: "The farming utensils or implements of husbandry of the judgment debtor, not exceeding in value the sum of one thousand dollars; also two oxen, or two horses, or two mules, and their harness, one cart or buggy and two wagons, and food for such oxen, horses or mules for one month; also seed grain or vegetables actually provided, reserved or on hand for the purpose of planting or sowing at any time within the ensuing six months, not exceeding in value two hundred dollars." In *Robert* v. *Adams,* 38 Cal. 383, [99 Am. Dec. 413], the court said of these exemptions: "The act (section 690) does not in express terms make this exemption applicable only to such judgment debtors as were engaged in the business of farming at the date of the levy; but it is obvious that such was the intention, and we so held in *Brusie* v. *Griffith,* 34 Cal. 305, [91 Am. Dec. 695]. That this is the correct interpretation of the act we entertain no doubt whatever." Farming implements of the farmer, like the tools of the artisan and the library of the professional man, are made exempt from execution so that he may have the means of earning his living at the business in which the tools and the implements or books are necessary. None of these things are exempt merely because found in possession, but because they are a part of the business for which they are adapted and to be used in such business. If the plaintiff was not engaged in farming when the levy was made, then the instruments of husbandry would not furnish him with the means whereby he could earn his living. It is true the plaintiff testified he was engaged in farming on the seventh day of September, 1904, but the other facts in the case do not support this statement. Neither does he produce a single other fact that would in any way tend to show he was farming at

that date.  Indeed, every fact in the case tends directly to show that he had quit farming, that he had abandoned the stock and tools with which to carry on farming.  This is not a case of a farmer going off his farm on a visit to another state for fifteen, thirty, or sixty days, and having his exempt property attached during that time.  Here is a case where a farmer had given up every vestige of farming, sold most of his farming implements, sold his summer-fallow, the seeder, given up all leases he had, declared that he was tired of hard work, that crops were getting poor, and there was nothing in it, abandoned his property, at least some of which he expected his father to take, sell and pay his debt in the bank, and according to his own statement did not know what he was going to do when he left California, and has not found out since.  We think the testimony clearly shows that appellant had quit farming on August 23, 1904, when he left the state, that he had no intention of resuming that business, that he was not engaged in farming on September 7th, and that he had abandoned his farming implements and stock prior to said date.

The evidence warrants the findings of the lower court, and, in turn, the findings support the judgment.

The judgment is affirmed.

Chipman, P. J., and McLaughlin, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 13, 1906.